UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PNC BANK NATIONAL ASSOCIATION                                            PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:13CV-297-S

SEMINARY WOODS, LLC, et al.                                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter came before the court for hearing concerning a request by Seminary Woods, LLC, for clarification of the court's Order Appointing Receiver[1] in connection with an impending auction of Regency Tower Unit #1105 owned by Liberty Capital, Ltd. DN 184. Participating on behalf of Seminary Woods, LLC were Clay Culotta and Jennifer Culotta. Participating on behalf of Intervening Party Liberty Capital, Ltd. was Jennifer Hatcher. Representing the Receiver, NTS Development Company were Stephen Miller and Jeffrey Stovall.

Seminary Woods seeks to prevent the auction on the ground that it would violate Article XIV (A)(1) and (B)(1)(a) of the Declaration of Horizontal Property Regime and Master Deed Establishing Seminary Woods Condominiums ("Master Deed"), executed and filed with the Jefferson County Clerk. These provisions purport to prohibit sale of a unit by the unit's owner

---

[1] Order Granting Plaintiff's Motion for Appointment of Receiver (DN 154).

through any individual or entity other than the "sole approved broker." The broker originally designated in the Master Deed was R-3 Realty, and later Semonin Realtors.[2] No party other than Seminary Woods objects to the auction. The Receiver has filed a brief which appears to be advisory in nature, indicates that it gives full deference to the court's position on the issue, and provides assurance that it will vigorously enforce the court's ruling. DN 190, p. 7.

The Master Deed vests "the management and operation of the condominium project..." in the Seminary Woods Condominiums Council of Co-Owners, Inc. (the "Council") Article VII (A). The Council was incorporated in Kentucky in December of 2005. The Council designated its Board of Directors and filed its annual reports until its dissolution by the Kentucky Secretary of State on January 10, 2012. DNs 22-12; 48-6.

The Master Deed provides that " Except as provided herein, no unit owner may dispose of a unit by sale without approval of the Board of Directors of the Council, except to another unit owner." Article XIV (A)(1).

Article XIV (B)(1)(a) states:

(B) Approval by Council. The approval of the Board of Directors of the Council that is required for the transfer of ownership of units shall be obtained in the following manner:

    (1) Notice to board of directors.

        (a) Sale. A unit owner intending to make a bona fide sale of his unit or any interest in it shall give the Board of Directors of the council notice of such intention, together with the name and address of the intended purchaser and such other information concerning the intended purchaser as the Board may reasonably

---

[2] There have apparently been thirteen separate amendments to the Master Deed. However, according to Liberty Capital, non of the later iterations contain amendments to Article XIV.

> require. Such notice at the unit owner's option may include a demand by the unit owner that the Board purchase the unit on behalf of all of the unit owners or furnish a purchaser of the unit if the proposed purchaser is not approved; and if such demand is made, the notice shall be accompanied by an executed copy of the proposed contract to sell. *Until such time as Declarant relinquishes control of the Council all units for sale shall be listed with R-3 Realty, the sole approved broker for any unit in the condominium.*

Article XIV (B)(1)(a)(emphasis added).

Seminary Woods urges that it [the Declarant] did not relinquish control of the Council at any time, and therefore the unit owner [Liberty Capital] must provide the required notice and utilize the "sole approved broker" for the sale of unit #1105. There are a number of problems with this argument.

As an initial matter, there is no Board of Directors to whom notice may be given, as the Council was dissolved in 2012. When Seminary Woods permitted the Council to lapse and failed to fulfill its obligation to operate in accordance with the Master Deed, and the corporation was dissolved by the Secretary of State, the Council ceased to exist. Clearly this constituted "relinquishment of control" of the Council by Seminary Woods. As such, the few current unit owners are no longer bound by the "sole approved broker" term, and Liberty Capital is free to market its unit for sale through a broker of its choosing.

We reject the argument of Seminary Woods that the written consent provision, Article VII (F), establishes that "relinquishment of control" of the Council under Article XIV (B)(1)(a) occurs only when 100% of units are sold, 15 years has elapsed from the filing of the Master Deed, or Seminary Woods executes a written release. Seminary Woods cannot credibly argue that Article VII (F), which, incidently, does not mention "relinquishment of control," can be relied upon to assert

continuing restraint on the marketing of the present owner's unit when Seminary Woods has not maintained a Council, as required by the Master Deed, for at least two years.[3]

The "relinquishment of control" language appears only in Article XIV (B)(1)(a). Thus our ruling impacts only that provision. The Master Deed contains a severability clause, Article XVI (A), which would allow for the limited scope we attribute to the ruling herein.

Seminary Woods further objects on the ground that NTS Commercial Realty was appointed the "preferred realtor" in this matter:

> When NTS was appointed receiver for Seminary Woods, as it relates to its interest in the Regency Tower, it effectively stepped into the shoes of the developer, and as such NTS became responsible for upholding and enforcing the rules governing the condominium regime. Likewise, as addressed in their Request for Clarification, [185], it is reasonably believed that NTS Commercial Realty, Inc., has assumed the role as the preferred realtor.

DN 188, p. 1.

Seminary Woods thus urges that there was no relinquishment of control of the Council, but rather a ceding of responsibility to the Receiver. NTS Development Company did, indeed, step into the shoes of the developer for purposes of preserving and maintaining the property. DN 154, ¶ 4. However, NTS Development stepped in for a developer who, for two years, failed to maintain a condominium council under the terms of the Master Deed. The developer's "relinquishment of control" of the Council occurred when it was ceased to operate and was dissolved in 2012. NTS Development, appointed in March, 2014, did not step into new shoes, but rather into the somewhat treadworn shoes of Seminary Woods.

---

[3]The court takes no position with regard to the ability of any subsequent developer to bind future unit owners to the Master Deed upon purchase.

As Receiver, NTS Development is vested with the authority to market developed and/or platted units and to market the entirety of the project, but may not enter into a sale of any unit without the approval of PNC and the court, with notice to the parties and an opportunity to be heard. *Id.* The authority vested in NTS Development as Receiver does not suggest in any respect that NTS Commercial Realty becomes the "preferred realtor" under the Master Deed, or that NTS Commercial Realty has any *automatic* authority or entitlement to the real estate business herein by virtue of the Order appointing NTS Development Company. There was no mention of NTS Commercial Realty, a company separate and apart from the Receiver, in the Order. NTS Commercial Realty may ultimately prove to be the best candidate for the marketing and sale of the property, but that is in no way a foregone conclusion.

Finally, Seminary Woods suggests that sale by auction is prohibited by the terms of the Master Deed. There is no such term in that document. This argument is wholly without merit.

For the reasons set forth herein, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that, in further clarification of the court's Order Granting Plaintiff's Motion for Appointment of Receiver (DN 154), Liberty Capital, Ltd. is not precluded from utilizing its preferred broker in the sale of Unit #1105. Liberty Capital has acknowledged an obligation to seek Council approval under Master Deed, Article XIV, (B)(1)(a) at such time as an intended purchaser is identified. Such request for approval may properly be made to the Receiver who must, in turn, evaluate the offer and file a motion for court approval in

accordance with the procedures outlined in paragraph 14 of the Order Appointing Receiver (DN 154).

**IT IS SO ORDERED.**

September 23, 2014

**Charles R. Simpson III, Senior Judge
United States District Court**

Court Reporter: Dena Legg
Time:   01/00