UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


PNC BANK, NATIONAL ASSOCIATION                                          PLAINTIFF


v.                                                                       3:13-CV-297-CRS


SEMINARY WOODS, LLC, et al.                                             DEFENDANTS


## MEMORANDUM OPINION

This matter is before the court on motion of the plaintiff, PNC Bank, National Association ("PNC"), for judgment on the pleadings on the remaining counterclaims asserted by defendants Curtis and Judy Royce (DN 41), Thomas and Carol Richards (DN 42), Carmine Scalzitti (DN 43), and Paul Merenbloom (DN 50). These defendants, collectively referred to herein as the "Contract Holders," have asserted claims for tortious interference with contracts, unjust enrichment, and violations of the Kentucky Consumer Protection Act.[1] The Richards also include a claim for tortious interference with prospective business advantage. All of the Contract Holders additionally seek to recover punitive damages from PNC. For the reasons stated herein, the Contract Holders' claims must be dismissed pursuant to Fed.R.Civ.P. 12(c).

In considering a Rule 12(c) motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th

---

[1] The court previously dismissed these remaining Contract Holders' equitable lien claims.  (DNs 294; 295).

Cir. 1973).   Although the court's decision rests primarily upon the allegations of the counterclaims, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  *Amin v. Oberlin* College, 259 F.3d 493, 502 (6th Cir. 2001), *quoting Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).   But the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).   To withstand a motion for judgment on the pleadings herein, a sufficient counterclaim will "contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Commercial Money Center, Inc. v. Illinois Union Insurance Company*, 508 F.3d 327 (6th Cir. 2007).

The Contract Holders urge identical legal theories with respect to their counterclaims. The only variations between them relate to the deposits paid by the Contract Holders, the transaction dates, and the additional claim asserted by the Richards. The counterclaims will therefore be addressed collectively.

1. Tortious Interference with Contracts

The Contract Holders claim that PNC tortiously interfered with their contracts with Seminary Woods LLC, the condominium developer, by allegedly " refusing to fund the build out costs for [their] unit[s]" without justification.  (DNs 41, 42, 43, 50, ¶ 20).   The Contract Holders' own allegations indicate that, in accordance with the Construction Loan Agreement between Seminary Woods and PNC, Seminary Woods transferred the Contract Holders' down payments, which had been escrowed with the Taylor County Bank, to PNC.   The Contract Holders acknowledge that Section 6.1 of the Construction Loan Agreement provides that "the down payments of contract holders…were to be used for payment of Lender approved Costs of Construction prior to any PNC loan funds being put into the building."  (DNs 41, 42, 43, 50, ¶

2

16).

Pursuant to the *Restatement (Second) of* Torts § 766 (1979), one may prevail on a claim for tortious interference with an existing contract only if there is *intentional* and *improper* interference with that contract.  The Supreme Court of Kentucky noted that a party seeking recovery for tortious interference "must show malice or some significantly wrongful conduct…[I]f the defendant has a legitimate interest to protect, the addition of a spite motive usually is not regarded as sufficient to result in liability."  *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky.App. 2005), *quoting Nat'l Collegiate Athletic Ass'n. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988).  The Contract Holders' counterclaims are devoid of facts suggesting intentional and improper interference.  In fact, their allegations suggest that PNC acted in accordance with the terms of the Construction Loan Agreement with Seminary Woods.  Such allegation is antithetical to their assertion that PNC's actions were unjustified.

The claims for tortious interference with contracts are deficient and will be dismissed.

2. <u>Unjust Enrichment</u>

The Contract Holders claim that "[i]f PNC is allowed to force [them] to forfeit their money and to obtain ownership of the building elements which…the [Contract Holders] paid [sic], PNC will be unjustly enriched."  (DNs 41, 42, 43, 50, ¶ 29).  However, in our previous opinion in which we rendered partial summary judgment against the Contract Holders on their equitable lien claims (DN 294), we noted that

> …[the Contract Holders] have failed to avail themselves of the legal remedy provided in their purchase agreements. *See Bolen v. Bolen*, 169 S.W.3d 59 (Ky.App. 2005)(stating that a court should not resort to equitable remedies when adequate legal remedies are available, *citing Wunderlich v. Scott*, 46 S.W.2d 753, 755 (1932)).  For eight years, the contract holders have failed to seek the

> return of their deposits under the terms of their contracts.   No further
> consideration need be given these claims.   The contract holders have no right to
> leapfrog over PNC Bank for these funds.

(DN 294, p. 2).  The same principle applies to this equitable claim as well.

As noted earlier herein, the Contract Holders' own factual allegations indicate that Seminary Woods transferred escrowed funds from Taylor County Bank to PNC Bank in accordance with the terms of the Construction Loan Agreement, and that the deposited funds were used to pay construction costs in accordance with those terms.  The same provision in the Agreement also states that "In no event shall [PNC] be required to disburse any amount [from the Sales Contract Reserve Account]…if an Event of Default or Conditional Default shall exist." Article VI, § 6.1(I).   There is no question that Seminary Woods defaulted on their loan obligations.

Further, the Contract Holders also allege that Section 9 of their respective contracts "specifically provides for the refund or forfeiture of their down payment deposit."  (DNs 41, 42, 43, 50, ¶ 8.  Therefore, as the Contract Holders had a clear remedy under their contracts with Seminary Woods which they have never pursued, equity will not assist them, now eight years later, in recovering these sums from third party PNC under an unjust enrichment theory.  The counterclaims for unjust enrichment must be dismissed.

3. Violation of the Kentucky Consumer Protection Act

The Contract Holders assert counterclaims alleging violation of the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*  However, the Kentucky courts have construed the consumer protection statute to require that "an individual be a purchaser with privity of contract in order to have standing to bring an action under the Act."  *Williams v. Chase Bank, USA, N.A.,*

390 S.W.3d 824, 829 (Ky.App. 2012), *citing* KRS 367.220 and *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907, 909 (Ky.App. 1992).

The Contract Holders baldly state in opposition to PNC's motion that "the Sales Contracts were assigned to PNC pursuant to the Agreement…then PNC stands in the shoes of Seminary Woods…then PNC and Seminary Woods, LLC are the same for purposes of the contracts, and there is privity to uphold the Contract Holders' claims under the Kentucky Consumer Protection Act. (DN 337, pp. 6-7). This argument is contrary to the very language of their counterclaims which state that "PNC has not provided to Seminary Woods, LLC or [the Contract Holders] any written notice stating that it has elected to replace Seminary Woods, LLC as the "Developer" under the purchase contracts, as required by the Assignment of Contracts between PNC and Seminary Woods, LLC…" (DNs 41, 42, 43, 50, ¶ 10). PNC admitted those allegations in its responses to the counterclaims. (DN 67, 68, 69, 70, at p. 4). Therefore, as there are no allegations in the counterclaims that there was an assignment of the purchase contracts, but rather averments to the contrary, and there are no other facts alleged to suggest privity between the Contract Holders and PNC, the counterclaims for violation of the Kentucky Consumer Protection Act must be dismissed.

4. <u>Tortious Interference with the Richards' Prospective Business Advantage</u>

The Richards also assert a claim for tortious interference with prospective business advantage. They claim that in March of 2010, they held a valid business expectancy, as they sought to sell their contract to an individual named George Lawson. (DN 42, ¶ 37). The Richards allege that PNC was asked to approve the transaction, but that PNC intentionally and without lawful or reasonable justification refused to approve it. (DN 42, ¶¶ 38, 39). They allege

5

that there was an improper motive behind PNC's interference. (DN 42, ¶ 40).

The Richards Contract (appended to the Answer and Counterclaim, DN 42-1) contains a non-assignability clause which states:

> **13.    Non-Assignability.**    The Purchaser understands and agrees that the Purchaser's rights and interest hereunder are not assignable or transferable without the prior written consent of Developer and then only upon such terms and conditions as established by Developer.   In the event Purchaser assigns or transfers, or attempts to assign or transfer, Purchaser's interest hereunder without Developer's prior written consent, such act shall constitute a default hereunder, and Developer shall have no obligation to recognize the assignee or transferee.

Thus the Richards contract was *non-assignable* unless the Richards obtained written consent of the Developer under terms and conditions established by the Developer.   The counterclaim is devoid of facts indicating that the Richards had Seminary Woods' written consent or that any terms and conditions were established by Seminary Woods for such sale.   PNC was not a party to the Condominium Sales Contract, and there are no allegations that there was an assignment of the contract to PNC.[2]   The counterclaim for tortious interference with prospective business advantage is clearly deficient, as it fails to allege sufficient facts to state a viable claim against PNC.

Further, a claim for tortious interference requires a showing of intentional and improper interference; that is, there must be a showing of malice or significantly wrongful conduct. Hornung, 754 S.W.2d at 859.   The Richards' counterclaim recites the phrases "improper motive" and "without lawful or reasonable justification" without providing any factual undergirding. "The court need not accept as true legal conclusions or unwarranted factual inference." *Mixon*, 193 F.3d at 400.   As the Richards' counterclaim for tortious interference with prospective business advantage is deficiently pled, the counterclaim will be dismissed.

---

[2] See the court's earlier discussion of the Kentucky Consumer Protection Act and the privity requirement.

5.  <u>Punitive Damages</u>

The Contract Holders' claims for punitive damages will also be dismissed as all substantive counterclaims herein will be dismissed as deficient.  "[A] plaintiff cannot recover punitive damages against a defendant unless that defendant's conduct was the proximate cause of any injury to the plaintiff."  *M.T. v. Saum*, 3 F.Supp.3d 617, 625 (W.D.Ky. 2014),  *citing Taylor v. King*, 345 S.W.3d 237 (Ky.App. 2010).

A separate order will be entered herein this date in accordance with this opinion.

**IT IS SO ORDERED.**

February 22, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**